**UNITED STATES of America, Appellee,**

v.

**Chester Floyd SOPCZAK, Appellant.**

**No. 83–2487.**

United States Court of Appeals,
Eighth Circuit.

Submitted May 11, 1984.
Decided Sept. 6, 1984.
Rehearing Denied Oct. 16, 1984.

W. Asa Hutchinson, U.S. Atty., Mark W. Webb, Asst. U.S. Atty., Fort Smith, Ark., for appellee.

Kenneth L. Sanders, Houston, Tex., for appellant Chester Floyd Sopczak.

Before BRIGHT, JOHN R. GIBSON and BOWMAN, Circuit Judges.

PER CURIAM.

Chester Floyd Sopczak appeals from his conviction on two counts of conspiring to transport a stolen motor vehicle in interstate commerce in violation of 18 U.S.C. § 371, and interstate transportation of a stolen motor vehicle in violation of 18 U.S.C. § 2312. For reversal Sopczak argues that (1) there was insufficient evidence to convict him on either the conspiracy or the interstate transportation count; (2) the district court[1] erred in denying his motion for a mistrial when a FBI Agent mentioned on cross-examination that he had changed his plea on the conspiracy charge from guilty to not guilty; and (3) venue was not proper in the Western District of Arkansas.

In 1982, Sopczak operated a wholesale used car business in Webster, Texas, and Hubert Cliett, an auto mechanic, operated a repair shop down the street from Sopczak's business. The two men established a business relationship whereby Cliett repaired cars for Sopczak before resale, and each referred customers to the other.

Sometime in early 1982, William O. Woodard, an Arkansas resident, told Cliett that he wanted a Lincoln Continental. Cliett relayed this information to Sopczak who arranged through an acquaintance named "Chico" to have an individual named "Eddie" obtain a Lincoln.

On May 6, 1982, an individual using the name "James Green" purchased a gray 1978 Lincoln Town Car, vehicle identification number 8Y82A916011, from Jack Criswell Lincoln Mercury in Houston, Texas. Green instructed the dealership to submit a draft to the Allied Bank of Texas for payment. The draft, which was discovered to be fraudulent, was returned to the dealership as uncollectable. Green could not be located. The dealership then reported the car as stolen.

Thereafter Sopczak called Cliett and informed him that Eddie had a Lincoln. Sopczak and one of Cliett's employees, Kim McNeese, then drove to a location where they met Eddie and paid him $550 for the car, $400 of which Sopczak had supplied. McNeese drove the car to Cliett's shop and Cliett then arranged to meet Woodard in Shreveport, Louisiana to consummate the sale. Cliett drove the car to Shreveport, turned it over to Woodard in exchange for $1,000 cash, and Woodard then drove it to his home in Smackover, Arkansas. Law enforcement officers later recovered the gray 1978 Lincoln Town Car, vehicle identification Number 8Y82A916011, from Woodard.

On March 3, 1983, a grand jury returned a two count indictment against Sopczak and Cliett. Count I charged them with conspiring to transport a stolen motor vehicle in interstate commerce in violation of 18 U.S.C. § 371. Count II charged them with interstate transportation of a stolen motor vehicle in violation of 18 U.S.C. § 2312. Pursuant to a plea agreement Cliett pled guilty to Count II in return for the Government's dropping Count I. Sopczak initially pled guilty to Count I and not guilty to

---

1. The Honorable Oren Harris, Senior United States District Judge for the Western District of Arkansas.

Count II, but later withdrew his guilty plea, deciding to stand trial on both counts.

A jury returned a verdict of guilty on both counts, and the district court sentenced Sopczak to three years imprisonment on Count I and three years on Count II. The court, however, suspended execution of the second sentence and placed Sopczak on probation for two years to begin after he served the three-year sentence on Count I. This appeal followed.

■ Sopczak argues that the evidence was insufficient to convict him of conspiring to transport a stolen motor vehicle in interstate commerce. To convict a defendant of criminal conspiracy, the Government must prove that "the individual entered an agreement with at least one other person, that the agreement had as its objective a violation of the law, and that one of those in agreement committed an act in furtherance of the objective." *United States v. Michaels*, 726 F.2d 1307, 1310–11 (8th Cir. 1984); *United States v. Evans*, 697 F.2d 240, 244–45 (8th Cir.), *cert. denied*, 460 U.S. 1086, 103 S.Ct. 1779, 76 L.Ed.2d 352 (1983). In reviewing the sufficiency of the evidence underlying Sopczak's conviction, we must view the evidence in the light most favorable to the jury verdict, accepting as established all reasonable inferences tending to support the verdict. *United States v. Jackson*, 714 F.2d 809, 812 (8th Cir.1983); *United States v. Pruitt*, 702 F.2d 152, 155 (8th Cir.1983).

Sopczak argues in particular that the testimony of his codefendant, Cliett, is the only evidence of record suggesting that he willfully conspired to transport the Lincoln in interstate commerce. Sopczak further argues that Cliett should not be believed because Cliett testified against him "to save his own hide."

■ Our review of the record reveals a substantial amount of evidence from which a jury could have found beyond a reasonable doubt that Sopczak knowingly conspired to transport the Lincoln in interstate commerce. In a conspiracy prosecution the testimony of a co-conspirator is not

per se unreliable, and it is for the jury to decide how much weight such testimony should be given. *United States v. Evans*, 697 F.2d at 245. Further, in addition to Cliett's testimony, the Government presented the testimony of two FBI Agents who interviewed Sopczak several months before his arrest. Sopczak does not dispute that he gave this interview voluntarily or that the agents informed him of his rights before he spoke. Agent Willey, who took notes during the interview, testified that Sopczak admitted (1) that Cliett contacted him about getting the Lincoln; (2) that through an acquaintance named Chico, who Sopczak knew dealt in stolen auto parts, Sopczak was introduced to an individual named Eddie; (3) that Eddie obtained a Lincoln, and Sopczak then relayed this information to Cliett; (4) that Sopczak and McNeese met Eddie and paid him $550 for the car, $400 of which Sopczak had supplied; and (5) that Sopczak knew the Lincoln would be driven to Arkansas. Agent Whitehurst's testimony corroborated these points. The agents' testimony was clearly sufficient to show that Sopczak willfully entered an agreement with Cliett to transport the stolen Lincoln in interstate commerce, and that Sopczak and Cliett committed several acts in furtherance of this illegal objective.

■ We also conclude that there was sufficient evidence from which a jury could have found beyond a reasonable doubt that Sopczak violated 18 U.S.C. § 2312 by aiding and abetting Cliett in the interstate transportation of the stolen motor vehicle. 18 U.S.C. § 2(a) provides:

Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

Section 2(a) applies to the entire criminal code, *United States v. Rector*, 538 F.2d 223, 225 (8th Cir.1976), *cert. denied*, 441 U.S. 963, 99 S.Ct. 2410, 60 L.Ed.2d 1068 (1979), and the district court instructed the jury on Section 2(a) in connection with the charge of interstate transportation of a stolen motor vehicle. The elements of aiding

and abetting are: (1) that the defendant associated himself with the unlawful venture; (2) that he participated in it as something he wished to bring about; and (3) that he sought by his actions to make it succeed. *United States v. Brim*, 630 F.2d 1307, 1311 (8th Cir.1980), *cert. denied*, 452 U.S. 966, 101 S.Ct. 3121, 69 L.Ed.2d 980 (1981). By arranging for the theft of the Lincoln and by supplying part of the money to purchase the car from the thief, Sopczak clearly associated himself with, participated in, and sought to further the interstate transportation of a stolen motor vehicle.

■ Sopczak next argues that the district court committed reversible error by denying his motion for a mistrial after Agent Willey mentioned on cross-examination that Sopczak had changed his plea from guilty to not guilty.

Sopczak contended at trial that at the time of the interview, Agent Willey told him that it would be to his advantage to supply the FBI information about other persons involved in the theft of the Lincoln. Sopczak alleged that he later tried to give the FBI this information but that no one was interested. On cross-examination defense counsel asked Agent Willey if Sopczak ever called him after the interview, and Willey responded that he did not know because for several months after the interview he was absent from his office, and Sopczak's case was reassigned to Agent Whitcomb. The following exchange then took place:

Q. Did either Agent Neu or Agent Venables ever tell you that Mister Sopczak had tried to contact you sometime in May, June, and July of that year?

A. Mister Venables or Mr. Neu to my recollection did not tell me this. Mister Whitcomb said that, I believe—

Q. Mister Whitcomb told you that he had tried to contact you?

A. Mister Whitcomb told me that he had been directed to re-interview Mister Sopczak by the Little Rock Division, by Mister Kidd. He attempted to contact him, and I believe he did get ahold of him on the phone. But before they were able to take and set up the interview that Mister Sopczak had come in here and changed his plea from guilty to not guilty, and, therefore, he was directed not to further re-interview him. This is what I remember. This was just recently. That was just before I got back from Quantico.

THE COURT: Ladies and gentlemen of the jury, the reference to testimony about what the defendant might have done in Court is not proper and you will disregard it altogether.

DEFENSE COUNSEL: Thank you, Your Honor.

A few minutes after this exchange took place the Government rested its case and defense counsel then moved for a mistrial arguing that Agent Willey's comment about Sopczak changing his plea had irreparably tainted the jury. The district court denied the motion, reasoning that no timely objection had been made, and that in any event the error was harmless. In finding the error harmless, the court observed that defense counsel's meticulous questioning of the agent about whether Sopczak had tried to contact him led to the undesired response.

Assuming without deciding that Sopczak did not waive his objection to the error, we conclude that the error does not warrant reversal when it is viewed in the context of the entire trial. Agent Willey's comment was made during the course of a lengthy cross-examination, the court gave an immediate curative instruction, and the comment was not referred to at any subsequent time during the trial. Further, it cannot be said that the prosecution deliberately interjected this information into the trial to prejudice the jury. Finally, Agent Willey's testimony clearly demonstrated that Sopczak conspired with Cliett to obtain and transport a stolen vehicle in interstate commerce. Sopczak admitted to Willey that he had arranged through an acquaintance named Chico to obtain the Lincoln and that he knew Chico dealt in stolen auto parts. He

also admitted supplying part of the money which was paid to the car thief. These admissions demonstrate that Sopczak actively participated in the plan to obtain a stolen vehicle for Woodard. When Agent Willey's comment about Sopczak changing his plea is viewed in conjunction with the overwhelming evidence of guilt, we believe that if the comment had any impact on the jury, it was minimal. The district court, therefore, correctly found the error to be harmless, and did not abuse its discretion in denying the motion for a mistrial.

Sopczak finally argues that the Government failed to establish that the alleged crimes occurred in the Western District of Arkansas and therefore venue was improper. This argument need not be addressed because Sopczak waived any challenge to venue by not raising the issue in the district court. *See United States v. Haley,* 500 F.2d 302, 305 (8th Cir.1974).

Accordingly, the judgment of conviction is affirmed.