UNITED STATES of America, Appellee,

v.

Donald U. AUSTIN, Appellant.

No. 86–2441.

United States Court of Appeals,
Eighth Circuit.

Submitted June 10, 1987.

Decided July 15, 1987.

Rehearing Denied Aug. 12, 1987.

Charles A. Coppola, Des Moines, Iowa, for appellant.

Joseph S. Beck, Asst. U.S. Atty., Des Moines, Iowa, for appellee.

Before LAY, Chief Judge, HEANEY, Circuit Judge, and LARSON,* Senior District Judge.

LARSON, Senior District Judge.

Defendant Donald U. Austin appeals from his convictions of conspiracy to misapply bank funds in violation of 18 U.S.C. § 371 (count 1), misapplication of bank funds in violation of 18 U.S.C. § 656 (count 2), and making false entries in bank records in violation of 18 U.S.C. § 1005 (count 3). He was sentenced to concurrent terms of one year on counts 2 and 3 and ordered to repay $50,786.58 to the West Des Moines States Bank. Imposition of sentence on count 1 was suspended and defendant was placed on probation for five years from the date of his release. The District Court [1] denied defendant's motions for acquittal or a new trial.

Austin was an attorney and an officer of the West Des Moines State Bank from 1980 through 1985. Austin's duties were to make loans, do in-house legal work and run the trust department. In early May, 1984, Austin was having financial difficulties and told his friend and associate, George Moore, that he needed $50,000 to pay a brokerage firm to avoid being sued. Austin asked Moore to contact Craig Smith, whom Moore did accounting work for, to see if Smith would lend Austin money.

When Smith replied he had no funds available, Austin arranged for Smith to borrow the money from the bank. At the time of Smith's loan, the bank had a policy limiting loans to officers to $5,000, and Iowa law limited such loans to $10,000. *See* Iowa Code § 524.706. On May 14, 1984, Smith, at Austin's request, signed a note for $55,000 with the understanding that the loan proceeds were ultimately for Austin and would be repaid by Austin. The funds were deposited in Smith's JA–RA Enterprises account, and transferred from there to his Aqua World account, to George Moore's firm's account, to Austin's father's account, and finally to Austin. Austin, as loan officer, noted on the bank's comment sheet that the loan was for "working capital" to be repaid from the sales of water slides, Smith's business. Austin did not disclose his interest in the money. Austin lost his job at the bank and ultimately failed to repay the loan. The bank's attempts to collect from Smith led to the discovery of Austin's interest in the proceeds and involvement in arranging for the loan.

In this appeal, Austin challenges his convictions under all three counts of the indictment. He claims there is insufficient evidence to support his convictions under any of the three counts, and alleges error in the court's jury instructions on misapplication of funds and the court's rulings regarding the admission of hearsay statements. We affirm the trial court.

### 1. Sufficiency of the Evidence of Conspiracy

Defendant argues the evidence of conspiracy is insufficient because there was no evidence that either of his alleged co-conspirators, George Moore or Craig

---

* The HONORABLE EARL R. LARSON, Senior District Court Judge for the District of Minnesota, sitting by designation.

[1]. The Honorable Harold D. Vietor, United States District Judge for the Southern District of Iowa.

Smith, possessed the requisite knowledge or specific intent to be a co-conspirator. The government need not prove the specific intent or knowledge of the alleged co-conspirators, however, in order to support Austin's conspiracy conviction. It need only show that defendant entered into an agreement with at least one other person, the objective of which was unlawful, and that one of those in agreement committed an overt act in furtherance of the objective. *See United States v. Sopczak,* 742 F.2d 1119, 1121 (8th Cir.1984); *United States v. Michaels,* 726 F.2d 1307, 1310–11 (8th Cir. 1984); *United States v. Skillman,* 442 F.2d 542, 547 (8th Cir.) *cert. denied,* 404 U.S. 833, 92 S.Ct. 82, 30 L.Ed.2d 63 (1971). There is sufficient evidence that defendant and Moore (and/or Smith) entered into an agreement to misappropriate bank funds and took actions in furtherance of that objective, and we find defendant's conspiracy conviction under these circumstances is proper.

### 2. Sufficiency of the Evidence of Misapplication

Defendant also contends there is insufficient evidence of his own criminal intent to misapply bank funds. Defendant relies upon a First Circuit case, *United States v. Gens,* 493 F.2d 216 (1st Cir.1974), for the proposition that there can be no specific intent to defraud the bank where the named debtor is both financially capable and fully understands his responsibility to repay. We do not believe that *Gens* should be applied in this case.

Defendant attempts to distinguish the case of *United States v. Krepps,* 605 F.2d 101 (3d Cir.1979), but it seems to us that *Krepps* is directly applicable here. In *Krepps,* the Third Circuit held a bank officer liable for misappropriation even though the named debtor had the ability and fully understood his obligation to repay where the bank officer himself received the loan proceeds. *Id.* at 106–08.

In this case Austin received the benefit of the loan, even though there were numerous wire transfers of the money before it reached his hands in order to hide his interest. The government submitted sufficient evidence of defendant's intent in this case. *Id. See also United States v. Shively,* 715 F.2d 260, 265–66 (7th Cir. 1983), *cert. denied,* 405 U.S. 1007, 104 S.Ct. 1001, 79 L.Ed.2d 233 (1984).

### 3. Sufficiency of the Evidence of False Entry

Defendant made an entry in the bank records which reflected a loan to Smith for working capital to be repaid from sales of water slides. Defendant argues this entry was a proper reflection of the transaction, since Smith testified that if he had to, he would repay the loan through sales of water slides. Defendant also argues there is no evidence of his specific intent since the loan was made to someone fully able to pay who understood his obligation to do so.

We find the defendant's entry contained material misleading omissions which Austin purposely omitted because he wanted to keep the true nature of the transactions hidden from the bank. We agree with the government that the entry is false and misleading, and that defendant intended it to be so. *See United States v. Krepps,* 605 F.2d at 108–09.

### 4. Jury Instructions on Misapplication

Defendant challenges the court's instruction on misapplication on the ground that it should have incorporated the *Gens* intent standard, a contention we have already rejected. Defendant also alleges that the court erroneously instructed the jury that violation of state law may indicate misapplication, and further, that Iowa law limited the amount a bank officer could borrow to $10,000. This is a correct statement of Iowa law, *see* Iowa Code § 524.-706, and we find that any error in including it was harmless in view of the other evidence of misapplication, including the bank's own policy that officers could only borrow $5,000 and the bank's testimony that the loan would not have been made had its true nature been known.

### 5. Hearsay Statements

 Finally, defendant contends the district court's error in admitting hearsay testimony regarding defendant's need for cash and his request of Moore that Smith lend him some could not be cured by the court's instruction to the jury to disregard the testimony and a mistrial should have been granted. At the time the statements were introduced, the court believed they might be statements by a co-conspirator and admissible on that ground. It later determined the conspiracy had not yet begun and instructed the jury to disregard the hearsay statements. We agree with the government that a mistrial is not warranted under the circumstances of this case. Other evidence to the same effect was properly before the jury and the error in allowing the jury to hear the hearsay was harmless.

### CONCLUSION

Austin misappropriated funds when he arranged for Smith to take out a loan for Austin's own benefit. Smith's ability and understanding of his obligation to repay does not change the fact that Austin intended to defraud the bank by concealing the true nature of the transaction to avoid the loan limits established by the bank and by Iowa law. Austin also made a false entry in characterizing the purpose of the loan as for "working capital." His agreement concerning the loan with Moore (and/or Smith) is sufficient evidence of a conspiracy, and we affirm the jury verdict and the district court's decision in all respects.